17-2870-cv
Bamba v. Fenton

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of December, two thousand eighteen.

PRESENT:
> ROBERT A. KATZMANN,
> > *Chief Judge,*
> DENNY CHIN,
> > *Circuit Judge,*
> JEFFREY A. MEYER,
> > *District Judge.*\*

_____

N'Dama Miankanze Bamba,

> *Plaintiff-Appellant,*

> v.                                                                          17-2870

Kimberly Fenton, Stony Brook University Hospital
aka Suny at Stony Brook Hospital

> *Defendants-Appellees.*

_____

FOR PLAINTIFF-APPELLANT:                      N'Dama Miankanze Bamba, Pro Se,
                                                                        Baltimore, Maryland.

_____

\* Judge Jeffrey Alker Meyer, of the United States District Court for the District of Connecticut, sitting by designation.

FOR DEFENDANTS-APPELLEES:                    Barbara D. Underwood, Acting
Attorney General; Andrew W.
Amend, Senior Assistant Solicitor
General; David Lawrence III,
Assistant Solicitor General of
Counsel, State of New York, New
York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant N'Dama Miankanze Bamba, proceeding pro se, appeals from a judgment in favor of her former employer, Stony Brook University Hospital ("SBUH"), and an SBUH employee, Dr. Kimberly Fenton, in her discrimination and retaliation suit under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. §§ 1981 and 1983.   We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a grant of summary judgment de novo, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party."  *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013) (per curiam).   "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

I.      **Title VII Retaliation**

Bamba argues that the district court erred by granting summary judgment to SBUH on her Title VII retaliation claim because (1) equitable tolling applies to the time-barred conduct set forth

2

in her 2013 Equal Employment Opportunity Commission ("EEOC") charge of discrimination ("charge"); and (2) under the continuing violation doctrine, the district court should have considered the relevant retaliatory actions from her 2014 EEOC charge that the court found time-barred. For the reasons explained below, Bamba's arguments in support of her Title VII claim fail.

Prior to filing a civil action under Title VII, a plaintiff must first file a charge with the EEOC or an equivalent state agency within 180 days of the discriminatory action; where, however, (as in New York), the alleged unlawful employment practice is first brought under state or local law, a plaintiff has 300 days in which to file her charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). A lawsuit based on a Title VII claim must be filed within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). The EEOC issued Bamba her first right-to-sue letter on November 20, 2013. Although Bamba alleges she first found out about her right-to-sue letter on March 19, 2014, even crediting this date (as the district court did), her Title VII lawsuit was filed on March 14, 2015, nearly one year later. Accordingly, the district court correctly determined that Bamba's Title VII claims set forth in her 2013 EEOC charge were time-barred.

The requirement that a plaintiff must file an EEOC charge within 300 days of the alleged discrimination is not jurisdictional and may be subject to, among other things, equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). To qualify for equitable tolling, a party must establish that she diligently pursued her rights but extraordinary circumstances prevented a timely filing. *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017). Such

3

relief is only appropriate in "rare and exceptional circumstances."[1]  *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).   We review denials of equitable tolling for an abuse of discretion.   *See A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2014).

Bamba has not presented any evidence from which a reasonable jury could find that such exceptional circumstances existed. *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (plaintiff bears burden of demonstrating the appropriateness of equitable tolling).   Bamba argues that never receiving the 2013 right-to-sue letter in the mail was an extraordinary circumstance.   However, she does not address why she did not diligently pursue her rights by timely filing her lawsuit within 90 days of receiving her right-to-sue letter in March 2014 instead of bringing her lawsuit nearly one year later in March 2015.   Accordingly, equitable tolling does not apply to save Bamba's claims set forth in her first EEOC complaint.   *See Zerilli-Edelglass*, 333 F.3d at 80.

The district court also correctly determined that three of the four retaliatory acts alleged in Bamba's second EEOC charge, filed on October 17, 2014, were time-barred.   Except for the April 2014 letter from the American Board of Pediatrics ("ABP"), all the alleged retaliatory acts in Bamba's 2014 EEOC charge occurred more than 300 days before she filed the 2014 complaint, making them untimely as well.   *See* 42 U.S.C. § 2000e-5; *Williams*, 458 F.3d at 69.

Bamba argues that because she timely commenced her lawsuit challenging the defendants' retaliatory acts within 90 days of receiving the right-to-sue letter related to the 2014 EEOC charge, the continuing violation doctrine applies to these otherwise time-barred Title VII claims.   Under

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

4

the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2014). We have explained that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Perf. Plastics Corp.*, 563 U.S. 1 (2011); *see Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (requiring allegation of an act of discrimination in furtherance of an ongoing policy to fall within limitations period). Here, the evidence Bamba has put forth does not raise any triable issue of whether the retaliatory acts in her second EEOC charge (a negative reference, termination letter, and biased termination appeal hearing) constituted a continuing policy or practice because all the evidence relates to discrete acts. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002) (explaining that "termination, failure to promote, denial of transfer, or refusal to hire" are discrete retaliatory acts insufficient to invoke the continuing violation doctrine).

Construed liberally, Bamba's argument on appeal is that the district court erred in holding that she did not state a prima facie claim of retaliation based on the letter from the ABP. Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework, where a plaintiff must first establish a prima facie case. Under this framework, a plaintiff sets forth a prima facie retaliation case by demonstrating: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal

5

connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted). As the district court noted, this claim founders on the causation element, given that the record did not raise a triable issue over whether SBUH's adverse evaluation, including the decision to deny Bamba credit for the 2012-2013 academic year, was causally linked to her 2013 EEOC charge because there was no evidence of overt retaliation. Nor was there an inference of causation shown through temporal proximity. *See Gorman-Bakos v. Cornell Coop. Extension*, 252 F. 3d 545, 554 (2d Cir. 2001). The ABP's April 2014 letter was written ten months after Bamba's 2013 EEOC charge (and predated Bamba's October 2014 EEOC charge). While we have not "drawn a bright line to define the outer limits" of temporal proximity in the Title VII retaliation context, a ten-month period between the adverse action and the protected activity does not support an inference of causation. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) (declining to find causal nexus between alleged retaliatory letter and protected activity where letter was written three months later). The lack of temporal proximity can be overcome if a plaintiff can show that the protected activity was followed by discriminatory treatment or a pattern of antagonism. *See Duplan v. City of New York,* 888 F.3d 612, 626 (2d Cir. 2018). Here, the record reveals no discriminatory treatment or pattern of antagonism by SBUH toward Bamba during the period between her firing and the April 2014 ABP letter.

Finally, Bamba's history of performance-related issues at SBUH undercuts her retaliation claim. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (noting that where adverse employment actions were part of "'extensive period of progressive discipline'" five

months prior to filing of EEOC charges, an inference of retaliation did not arise). Bamba's disciplinary issues at SBUH began as early as August 2012 and predated her May 2013 EEOC charge by at least nine months.

Altogether, Bamba failed to adduce evidence from which a reasonable jury could find a causal nexus between her EEOC charges and the adverse employment action. Her Title VII claim was properly dismissed.

## II.     Section 1981 Claim against SBUH

The district court properly granted summary judgment on Bamba's § 1981 claim against SBUH based on Eleventh Amendment sovereign immunity grounds. "The Eleventh Amendment generally bars suits in federal court by private individuals against non-consenting states." *Leitner v. Westchester Cmty. Coll.,* 779 F.3d 130, 134 (2d Cir. 2015). Eleventh Amendment immunity "encompasses not just actions in which a state is actually named as a defendant, but also certain actions against state agents and instrumentalities[.]" *Id.* Stony Brook University and SBUH, the institutional defendant, are part of the State University of New York ("SUNY") system, which is an integral part of the New York State government; thus, when either is sued, New York State is the true party for Eleventh Amendment purposes and sovereign immunity applies. *See Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001). As such, sovereign immunity bars Bamba's § 1981 claim against SBUH.

## III.     Section 1983 Claim against Fenton

The elements of a retaliation claim premised on an equal protection violation under § 1983 "mirror those under Title VII." *Vega v. Hempstead Union Free. Sch. Dist.*, 801 F.3d 72, 91 (2d

7

Cir. 2015); *see Hicks*, 593 F.3d at 164.   As a threshold matter, Bamba's argument that her father's May 2013 complaint on her behalf to the New York State Physicians Board ("NYSPB complaint") was a protected activity is unavailing.   To qualify as a protected activity, an employee must have a good faith, reasonable belief that the challenged actions violated the law.   *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs*, *P.C.*, 716 F.3d 10, 14 (2d Cir. 2013).   But a plaintiff's belief is not reasonable "simply because . . . she complains of something that appears to be discrimination in some form."   *Id*. at 15.   Moreover, the employer must be able to reasonably understand that the complaint was directed at conduct prohibited by Title VII.   *See id*. at 15–17 (pointing out that particular words such as "discrimination" alone are insufficient to put an employer on notice).   The NYSPB complaint failed to allege any facts to support a discrimination claim, claiming only that Bamba was "discriminated and defamed" by Fenton and other SBUH officials, and that her letter of probation and demotion were acts of "overt sabotage and discrimination."   Given these conclusory allegations, Fenton could not have reasonably known that Bamba's NYSPB complaint alleged racial discrimination under Title VII as to constitute a protected activity.   *See Kelly*, 716 F.3d at 15.

Bamba also contends that Fenton was aware of the NYSPB complaint when she issued the June 2013 termination letter.   However, Fenton testified that she did not learn about this complaint until June 2016, almost three years after Bamba's termination, and there is no evidence in the record that suggests Fenton knew about the complaint.   *See Lore v. City of Syracuse*, 670 F.3d 147, 172 (2d Cir. 2012) (affirming judgment for individual defendant who lacked personal knowledge of the protected activity at the time of the alleged retaliation).   Still, we have explained

8

that an individual's lack of personal knowledge does not bar a retaliation claim if the evidence demonstrates that the individual "is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Here, no evidence suggests that Fenton was acting on the orders of any of her superiors who had knowledge about the NYSPB complaint. Accordingly, the district court did not err in granting summary judgment to appellees on this claim.

Bamba also argues that the court's ruling was contradictory because it held that Fenton had a "general corporate knowledge" about her 2013 EEOC charge, but granted summary judgment because she did not raise a genuine dispute as to whether Fenton had actual knowledge of that EEOC charge.[2] However, these two references go to different prongs of the prima facie test. The first is directed to the employer's receipt of the charge, which suffices for knowledge about Bamba's 2013 EEOC charge. *See Gordon,* 232 F.3d at 116. The second is directed to causation, where Bamba had to show that Fenton personally knew of the 2013 EEOC charge before she issued the termination letter. Fenton testified that she did not have knowledge about Bamba's May 2013 EEOC charge until the end of July 2013—after Fenton signed the termination letter—

---

[2] Bamba does not challenge the district court's rulings that she failed to establish a prima facie showing of retaliation against Fenton based on Fenton's failure to provide a letter of reference in 2013 and Fenton's submission of a negative employment reference in 2014, so any challenge to those rulings are waived. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived"). In addition, Bamba does not challenge the district court's determination that she failed to establish a causal connection between Fenton's adverse evaluation, referenced in the April 2014 letter from the ABP, and Bamba's May 2013 EEOC charge, so that claim is also waived. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) (explaining that arguments not sufficiently argued in briefs are considered waived).

and there is nothing in the record that controverts this testimony. And although the record demonstrated that SBUH Human Resources Department personnel received a notice dated June 13, 2013, of Bamba's 2013 EEOC charge, which was prior to the issuance of the termination letter, there was no evidence that Fenton signed the letter pursuant to their orders. Accordingly, Bamba has not presented evidence from which a reasonable jury could find that an adverse employment action was caused by Bamba's filing of an EEOC charge. Thus, there is no triable issue concerning causation, and summary judgment was properly granted as to her claim of retaliation. *See Vega,* 801 F.3d at 91.

We have considered all of Bamba's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10