Kathleen PALUMMO, Plaintiff–Appellant,

v.

ST. VINCENT'S MEDICAL CENTER, Sisters of Charity Health Care Center, St. Vincent's Campus and ABC Corporation, Defendants–Appellees.

No. 00–7984.

United States Court of Appeals, Second Circuit.

Feb. 21, 2001.

Brendan O'Meara & Mark Constantine, Law Office of Thaniel J. Beinert, Brooklyn, NY, for appellant.

Michael T. McGrath, Putney, Twombly, Hall & Hirson LLP; Marc B. Zimmerman and Alexander Tchernovitz, of counsel, New York, NY, for appellees.

Present NEWMAN, LEVAL and SACK, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is AFFIRMED.

The plaintiff appeals from an order of the district court granting summary judgment to the defendants on the ground that the plaintiff's harassment and retaliation claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"), were untimely because the plaintiff had not filed a charge with the Equal Employment Opportunity Commission within 300 days of the allegedly discriminatory acts. We affirm.

The facts relating to the timeliness of the plaintiff's suit are not in dispute. The plaintiff was hired by defendant St. Vincent's Medical Center (the "Hospital") in June 1989 as a switchboard operator. During her employment, the plaintiff developed a disorder which caused her to suffer "transient ischemic attacks," or mini-strokes. The plaintiff alleges that she suffered such a mini-stroke after being harassed at work on September 25, 1996, leaving "her permanently disabled and unable to ever return to employment."

The plaintiff took a medical leave of absence beginning the next day. On October 28, 1996, the Hospital sent her a letter informing her that she had exhausted her twelve weeks of medical leave under the Family Medical Leave Act. Thus, according to Hospital policy, although she would remain on medical leave, she would have to apply for a vacant position when she was able to return to work. If, by the first anniversary of the commencement of her medical leave, (1) she could not return to work or (2) she could return but the Hospital could not find a suitable position for her, she would be terminated. The letter ended with the assurance "that we have located suitable employment for most, if not all, of those employees who can return to work and stay in contact with us."

Effective September 22, 1997—more than 300 days after the plaintiff's leave of absence began and also more than 300 days after the plaintiff received the October 28, 1996 letter—the plaintiff filed a charge with the EEOC claiming that she had been harassed because of her disability and age in violation of the ADA and ADEA.

On September 26, 1997, the Hospital terminated the plaintiff as it said it would in the October 28 letter. The plaintiff returned to work and was notified of her termination on October 1, 1997. The Hospital also sent her a letter on October 1 informing her that her health benefits could continue only under COBRA.

On October 9, 1997, the EEOC dismissed the plaintiff's charge as untimely. The plaintiff filed a second charge with the EEOC on October 22, 1997, making the same harassment allegations but adding that her termination was in retaliation for her first EEOC complaint. The EEOC issued a right to sue letter on April 26, 1999,

and the plaintiff filed suit on May 28, 1999 in the United States District Court for the Eastern District of New York.

The defendants moved for summary judgment on the ground that the plaintiff had failed to file a charge with the EEOC within 300 days of the allegedly unlawful employment practices, as required by the ADA and ADEA. Although the complaint only states claims for harassment in violation of the ADA and ADEA, the district court assumed, for purposes of addressing the summary judgment motion, that the plaintiff also alleged a claim for retaliatory discharge.

The district court analyzed the harassment and the retaliatory discharge claims separately and found both of them untimely. With respect to the harassment claims, the district court found them untimely because the first EEOC charge was filed more than 300 days after her last day of work. With respect to the retaliatory discharge claim, the district court held that the 300-day period began to run on the date of the October 28 letter rather than the effective date of termination. The plaintiff appeals the district court's decision.

The ADEA and ADA both require, as a prerequisite for a federal civil action, the filing of a timely charge of unlawful discrimination with the EEOC. The issue before us is whether the plaintiff filed a charge within 300 days of the allegedly discriminatory acts.[1]

The plaintiff does not challenge on appeal the district court's holding that the harassment claim is time-barred. It is undisputed that the plaintiff's last day at work—the last day she could have been subjected to harassment—was more than 300 days before the plaintiff filed her EEOC charge. That claim is therefore barred.

The dispute with respect to the timeliness of the retaliation claim centers on the date upon which the 300-day period began to run. The defendants argue, and the district court held, that the period began on October 28, 1996, when the plaintiff received the Hospital's October 28 letter explaining her employment status. The plaintiff argues that there is at least a genuine dispute of fact about whether the period began on October 28, 1996 or on October 1, 1997, when the plaintiff was given notice that she had actually been terminated.

In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court held that the period for filing an EEOC charge begins on the day an employee receives notice of an adverse employment action rather than on the effective date of the action. *See id.* at 256–58. Following *Ricks*, we held that the 300-day period "starts running on the date when the employee receives a definite

---

1. Under the ADEA, if the state in which the alleged discrimination occurred has a law prohibiting age discrimination and authorizing a state agency to enforce that law, as New York does, then the plaintiff must file a charge with the EEOC within 300 days of the allegedly discriminatory act. *See* 29 U.S.C. §§ 626(d)(2), 633(b); *Brodsky v. City University of New York*, 56 F.3d 8, 9 (2d Cir.1995). Under the ADA, a plaintiff must file an EEOC charge within 180 days unless she has filed a charge with a state agency, in which case the time limit is 300 days. *See* 42 U.S.C. § 12117(a) (ADA provision incorporating by reference Title VII's provision, 42 U.S.C. § 2000e–5(e)(1)); *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir.1999). Because the plaintiff did not file a charge with the appropriate New York agency, the time limit under the ADA is 180 days. Although the district court thought that the time limit under the ADA was 300 days, it makes no difference in this case, so we will proceed as if the time limit under both statutes is 300 days.

notice of the termination, not upon his discharge." *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 23 (2d Cir.1985); *see Smith v. United Parcel Svc. of Am., Inc.,* 65 F.3d 266, 268 (2d Cir.1995); *Economu v. Borg–Warner Corp.,* 829 F.2d 311, 315 (2d Cir.1987).

■ The plaintiff argues that the October 28 letter was not a "definite notice of termination," *Miller,* 755 F.2d at 23, because of the conditional nature of the letter and the assurance at the end of the letter that a job usually can be found for employees returning from medical leave. We also note that the plaintiff's cause of action is one for *retaliation,* which could have arisen only *after* she filed her EEOC charge. Thus, the 300–day period for the retaliation claim could not have begun when the plaintiff received the October 28 letter. We therefore decline to affirm the grant of summary judgment on timeliness grounds.

■ Instead, we affirm on the alternate ground that there is no genuine factual dispute as to whether the plaintiff's discharge was retaliatory. A claim for retaliation under either the ADA or the ADEA has four elements: "(1) the employee was engaged in an activity protected by the ADA [or ADEA], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir.2000) (discussing elements of an ADA retaliation claim); *see Hollander v.. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990) (discussing elements of an ADEA retaliation claim).

We conclude that the plaintiff cannot establish a causal connection between the filing of her first EEOC charge and the termination. First, the defendants did not receive notice of the EEOC charge until October 2, 1997—one day *after* the plaintiff was notified of her termination. Second, the October 28 letter—mailed before the EEOC charge was filed—clearly notified the plaintiff that she would be terminated pursuant to the Hospital's policy if she did not return to work. Thus, the plaintiff's termination was a result of the Hospital's policy, not retaliation for her EEOC filing. There is no evidence in the record supporting the plaintiff's position that the termination was retaliatory.

For the foregoing reasons, the judgment of the District Court is hereby affirmed.