16-2004-cv
Irrera v. Humpherys, *et al.*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2016

Argued:  May 31, 2017          Decided: June 15, 2017

Docket No. 16-2004

- - - - - - - - - - - - - - - - - - - - - - - -

DR. JOSEPH IRRERA,
        Plaintiff-Appellant,

            v.

DR. DOUGLAS HUMPHERYS, Individually,
        UNIVERSITY OF ROCHESTER[1]
        Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - -


Before:  NEWMAN, CABRANES, and LYNCH, <u>Circuit Judges</u>.


    Appeal from the May 24, 2016, Order of the District Court for the Western District of New York (David G. Larimer, District Judge) dismissing for failure to state a

---

    [1] The Clerk is requested to change the official caption as above.

claim on which relief can be granted a complaint by a graduate music student alleging sexual harassment and retaliation by his teacher, who is chair of the piano department of the Eastman School of Music of the University of Rochester, and by the school.

Affirmed in part, in a summary order filed this day, as to the claims of sexual harassment and reversed in part and remanded, in this opinion, as to the claim of retaliation.

> Stewart Lee Karlin, New York, NY (Stewart Lee Karlin Law Group, PC, New York, NY, for Plaintiff-Appellant.

> Marion Blankopf, Rochester, NY (Nixon Peabody LLP, Christopher D. Thomas, Rochester, NY, on the brief), for Defendants-Appellees.

JON O. NEWMAN, Circuit Judge:

The issue on this appeal is whether a claim of retaliation for complaining of sexual harassment was sufficiently plausible to withstand a motion to dismiss at

2

the pleading stage. Dr. Joseph Irrera appeals from the May 24, 2016, Order of the District Court for the Western District of New York (David G. Larimer, District Judge), granting the motion of defendants-appellants Douglas Humpherys and the University of Rochester to dismiss Irrera's complaint for failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Other issues raised by Irrera's appeal have been adjudicated in a summary order filed this day.[2]

## Background

Irrera was a graduate piano student at the Eastman School of Music ("Eastman") of the University of Rochester from 2009 to 2014, pursuing a doctor of musical arts

---

[2] We have considered this appeal on an expedited basis, pursuant to our Expedited Appeal Calendar, *see* Second Circuit Local Rule 31.2(b). We adopted that rule in the aftermath of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to give expedited consideration to appeals from judgments and orders dismissing complaints at the pleading stage. *See* Jon O. Newman, "The Second Circuit's Expedited Appeals Calendar for Threshold Dismissals," 80 Brook. L. Rev. 429 (2015).

("DMA") degree.[3] Humpherys, the chair of the piano department, was initially Irrera's teacher.

The complaint, accepted as true for purposes of this appeal, made several allegations against Humpherys. He made an unwanted sexual advance toward Irrera by caressing Irrera's shoulder and rubbing his hands up and down Irrera's arms for approximately four minutes during a piano lesson. Humpherys also leaned his crotch into Irrera's back during the same lesson. On other occasions Humpherys winked at him, blew kisses at him, raised his eyebrows at him, and looked up and down at him in a sexual manner when they encountered each other in Eastman's common areas. Another professor at Eastman, who was a close confidant of Humpherys', told Irrera that Humpherys was "in love" with him. A-41. Irrera rejected Humpherys' sexual advances.

Students seeking a DMA degree are required, among other things, to perform two solo recitals on their primary instrument. Humpherys repeatedly assured Irrera that he was ready for his first required solo piano recital and that he

---

[3] Irrera had previously received his bachelor degree in piano performance at Eastman and received his master's degree at the Peabody Conservatory in Baltimore, Maryland.

4

would do well in that recital, a prediction that almost always proved correct with other students. The recital was judged by a panel of three professors, including Humpherys. Graded on a pass/fail basis, Irrera was given a failing grade in retaliation for rejecting Humpherys' sexual advances. Another professor at Eastman informed Irrera that Humpherys, walking into the recital, had told her that "it will not go well[,]" A-43, and, after the recital, told Irrera that he had played well enough to pass. Humpherys gave Irrera unusually short notice of his second solo recital, which was judged by the same panel that judged the first recital. The second panel also gave Irrera a failing grade.

In the 27 years that Irrera had been playing the piano, he had never previously failed a solo recital. A few months after being judged to have failed the second solo recital, Irrera won the American Protégé International Competition and performed at Carnegie Hall for the second time. After Eastman assigned another member of the piano faculty as Irrera's teacher, he was successful on all his subsequent recitals and graduated with a DMA degree in 2014.

5

Humpherys told Irrera in a recorded conversation that he "would never get a university professor job," A-45, and threatened to "make his life a living hell" if he made any written report of sexual harassment, A-51. An Eastman Dean, Marie Rolf, told Irrera that she expected that "future employers would call, email or otherwise contact Humpherys to get feedback regarding [his] abilities to perform in his primary instrument[,]" A-49, that "she received calls all the time even though not listed as someone's reference," *id.,* and that "'we cannot get [Humpherys] out of your life -- he has been your teacher for so long[,]'" *id.*

After receiving his DMA degree from Eastman, Irrera applied to twenty-eight colleges and universities for open teaching positions in their piano departments, but did not receive a single invitation for an interview. Such an outcome, he alleges, is "extraordinarily rare (unheard of)" for an Eastman graduate, and "[p]ractically all of the DMA students at Eastman in the same year have found a job shortly after they graduated and some even while they were still completing the DMA degree." A-57.

Irrera grounded his claim of retaliation on the theory that the absence of any interviews resulted from negative references from Humpherys and that Humpherys gave a negative reference as a result of Irrera's rejection of Humpherys' sexual advances. The District Court dismissed Irrera's retaliation claim, concluding that it was speculative because he failed to make factual allegations that Humpherys or any other professor at Eastman gave any of his potential employers a reference, let alone a negative reference.

## Discussion

Ever since the Supreme Court replaced the lenient pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957), with a somewhat more restrictive standard, *see Bell Atlantic Corp. v. Twombly,* 550 U.S. 554 (2007), which it called a "plausibility standard," *id.* at 560; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), courts have struggled to draw the line between speculative allegations and those of sufficient plausibility to survive a motion to dismiss. The Supreme Court provided scant guidance for drawing that elusive line. Judges were told to rely on their "experience

7

and common sense," *id.* at 679, and to consider the context in which a claim is made, *id.* The context of the discrimination claims in *Iqbal* was the detention of Muslim aliens held on immigration charges in the immediate aftermath of the attack of 9/11. Even in that context, four justices of the Supreme Court deemed the allegations sufficient to meet the plausibility standard, but five justices did not. Ultimately, *Iqbal* instructs, courts are to determine whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Bell Atlantic*, 550 U.S. at 570).

Endeavoring to apply the plausibility standard to Irrera's retaliation claim, we conclude that it is plausible. The context of Irrera's retaliation claim is the unsuccessful quest of a graduate conservatory piano student for a teaching position after he declined alleged sexual approaches from the man who was his teacher and the department chair. Irrera is a graduate of one of the Nation's most highly regarded schools of music and the recipient of a prestigious honor. Although it is not impossible that all twenty-eight schools to which he

applied for open teaching positions deemed his credentials insufficient to warrant an interview, it is plausible that these schools received negative references from the chairman of Eastman's piano department, who had been Irrera's teacher. It is also plausible that a teacher who warned his student that he would make his life a "living hell" if he made a written report of the teacher's sexual advances would give that student a negative reference, even if the student later complained to a school dean only orally. And it is also plausible that, since such a teacher is the chair of a department, he would be contacted by schools to which Irrera applied even though he was understandably not listed as a reference. Although Irrera's complaint makes no allegation that he is aware of a negative reference sent to any particular school, common experience indicates that schools and colleges rarely, if ever, disclose the content of the references they receive, in the absence of court-ordered discovery. Although some of these circumstances occurred outside the applicable limitations period, as we concluded in our summary order, they are nonetheless relevant to Irrera's timely claim of retaliation, and they persuade us that that claim is

9

plausible and that dismissal at the pleading stage was error.[4]

## Conclusion

The Order of the District Court is vacated in part, and the case is remanded for further consideration of Irrera's retaliation claims. [5]

---

[4] We also conclude that the District Court erred in dismissing Irrera's retaliation claim as to his student internship at Eastman Community Music School ("ECMS"). Irrera had interned at ECMS since 2007, but was told in 2014 that he could not continue because he has graduated from Eastman. Irrera contends that the denial of the ECMS internship was in retaliation for his sexual harassment complaint. The amended complaint names other DMA graduates who were allowed to serve as interns at ECMS following their graduation, and alleges that the ECMS faculty handbook allows interns to increase their teaching load to 17.5 hours per week after they have graduated from the DMA program, calling into question Eastman's asserted rationale for terminating the internship. Taking these allegations together with the other allegations detailed in this opinion, we conclude that Irrera has plausibly pled a retaliation claim as to the ECMS internship.

[5] The District Court declined to exercise supplemental jurisdiction over Irrera's remaining state and common law claims, including his breach of contract claim, because it had dismissed all of Irrera's federal claims. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). On remand, the District Court should reconsider its decision regarding its exercise of supplemental jurisdiction as to state and local law claims related to the retaliation claim.